William L. Crowley
Thomas J. Leonard
Mary Cile Glover-Rogers
BOONE KARLBERG P.C.
201 West Main, Suite 300
P.O. Box 9199
Missoula, MT 59807-9199
Telephone: (406)543-6646
Facsimile: (406) 549-6804
bcrowley@boonekarlberg.com
tleonard@boonekarlberg.com
mgloverrogers@boonekarlberg.com

Colleen E. Ambrose
Special Assistant Attorney General
Department of Corrections
5 South Last Chance Gulch
P.O. Box 201301
Helena, MT 59620
Telephone: (406) 444-4152
Facsimile: (406) 444-4920
cambrose@mt.gov

*Attorneys for Defendants Mike Batista and Leroy Kirkegard*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| DISABILITY RIGHTS MONTANA, INC., on behalf of all prisoners with serious mental illness confined to the Montana State Prison,<br><br>Plaintiff,<br><br>v.<br><br>MIKE BATISTA, in his official capacity as Director of the Montana Department of Corrections; LEROY KIRKEGARD, in his official capacity as warden of Montana State Prison,<br><br>Defendants. | Cause No. CV-15-022-BU-SEH<br><br><br><br><br>**BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT AGAINST DOC DEFENDANTS** |

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

LEGAL STANDARD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

I.     DRM HAS FAILED TO STATE A CLAIM UNDER
       42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

       A.     DRM Has Not Alleged Deliberate Indifference . . . . . . . . . . . . . . .11

       B.     DRM Has Not Alleged a Deficient Policy or Custom . . . . . . . . . .16

              1.     No Allegations Suggest a Deficient Written Policy . . . . . . .16

              2.     Sporadic, Isolated Incidents Are Not Evidence of
                     an Ongoing Custom or Practice . . . . . . . . . . . . . . . . . . . . . . .17

              3.     DRM Has Not Alleged That a Policy or Custom at
                     MSP is Likely to Cause Violations of the Eighth
                     Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

II.    DRM LACKS STANDING TO SEEK INJUNCTIVE AND
       DECLARATORY RELIEF. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .29

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .31

# TABLE OF AUTHORITIES

## State Cases

<u>**Page**</u>

*Harris v. Co. of King,*
No. C05-1121C, 2006 WL2711769 (W.D. Wash. Sept. 21, 2006) . . . . . . . 15

*Katka v. State,*
Cause No. ADV 2009-1163 (First Jud. Dist. Court, Lewis
& Clark Co.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Walker v. State,*
68 P.3d 872 (Mont. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## Federal Cases

*Aiken v. Nixon,*
236 F. Supp. 2d 211 (N.D. N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Bd. of Co. Commrs. of Bryan Co., Okla. v. Brown,*
520 U.S. 397 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

*Brown v. Crawford,*
906 F.2d 667 (11th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

*Capps v. Atiyeh,*
559 F. Supp. 894 (D. Ore. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 25

*City of Canton, Ohio v. Harris,*
489 U.S. 378 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10-11

*City of St. Louis v. Praprotnik,*
485 U.S. 112 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11-12

*Clouthier v. Co. of Contra Costa,*
    591 F.3d 1232 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Coleman v. Wilson,*
    912 F. Supp. 1282 (E.D. Cal. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . 24-25

*Connick v. Thompson,*
    131 S. Ct. 1350 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10-11

*Ex parte Young,*
    209 U.S. 123 (1908) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

*Farmer v. Brennan,*
    511 U.S. 825 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

*Flores v. Co. of L.A.,*
    758 F.3d 1154 (9th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Gibson v. Co. of Washoe, Nev.,*
    290 F.3d 1175 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Gillette v. Delmore,*
    979 F.2d 1342 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Gomez v. Vernon,*
    255 F.3d 1118 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .26-27

*Harry A. v. Duncan,*
    351 F. Supp. 2d 1060 (D. Mont. 2005) . . . . . . . . . . . . . . . . . . . . . . . . .23-24

*Hartmann v. Cal. Dept. of Corrects. & Rehab.,*
    707 F.3d 1114 (9th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Haynie v. Harris,*
    2014 WL899189 (E.D. Cal. 2014) . . . . . . . . . . . . . . . . . . . . . . . . 26-27, 29

*Hodgers-Durgin v. V. de la Vina,*
    199 F.3d 1037 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .27

*Iron Arrow Honor Socy. v. Heckler,*
    464 U.S. 67 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

*Jackson v. McIntosh,*
    90 F.3d 330 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Jett v. Penner,*
    439 F.3d 1091 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24

*Johnson v. Riverside Healthcare System, LP,*
    534 F.3d 1116 (9th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

*Kelly v. Ariz. Dept. of Correct.,*
    209 Fed. Appx. 124 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . .15

*Lytle v. Carl,*
    382 F.3d 978 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Manchacu v. Yates,*
    2009 WL172179 (E.D. Cal. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . .12

*McCray v. Williams,*
    357 F. Supp. 2d 774 (D. Del. 2005) . . . . . . . . . . . . . . . . . . . . . . . 14

*McDade v. West,*
    223 F.3d 1135 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

*Monell v. Depart. of Social Serv. of N.Y.C.,*
    436 U.S. 658 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

*Moss v. U.S. Secret Serv.,*
    572 F.3d 962 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Myron v. Terhune,*
    476 F.3d 716 (4th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

*Pembaur v. City of Cincinnati,*
    475 U.S. 469 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

*Sanchez v. Vild,*
    891 F.2d 240 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

5

*Smith v. Woodford*,
    2008 WL276382 (N.D. Cal. 2008) . . . . . . . . . . . . . . . . . . . . . .13-14, 17

*Tischler v. Billings Women's Prison*,
    Cause No. CV-07-173- BLG-RFC-CSO, 2008 WL2233501
    (D. Mont. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .28

*Toguchi v. Chung*,
    395 F.3d 1051 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Trevino v. Gates*,
    99 F.3d 911 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . .18, 23, 29

*Va. Off. for Protec. & Advoc. v. Stewart*,
    131 S. Ct. 1632 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

*Vasquez v. Ruckauckas*,
    734 F.3d 1025 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . .14

*Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*,
    535 U.S. 535 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .27

*Watson v. St. of Mont.*,
    2006 WL1876891 (D. Mont. 2006) . . . . . . . . . . . . . . . . . . . . 14, 25-26

*Will v. Mich. Dep't of St. Police*,
    491 U.S. 58 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

## State Statutes

Mont. Code Ann. § 53-1-204. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11-12

Mont. Code Ann. § 53-21-102 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 25

## State Rules

Admin. R. Mont. 20.1.101(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

## Federal Rules

Fed. R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 30

## Federal Acts

Prison Litigation Reform Act (PLRA) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27-28

Protection and Advocacy for Individuals with Mental Illness Act (PAMII) . .16, 28

## United States Code

18 U.S.C. § 3626 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27-28

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 10, 11, 15, 23, 25, 26, 29

42 U.S.C. § 1997e . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

42 U.S.C. § 10801 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

42 U.S.C. § 10802 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

42 U.S.C. § 10807 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28-29

## INTRODUCTION

Plaintiff Disability Rights Montana ("DRM") has failed to state a claim for relief under 42 U.S.C. § 1983. DRM's Complaint lacks sufficient factual matter to support the essential elements of a federal civil rights claim, including deliberate indifference by a final policymaker, the existence of a deficient policy or custom, and causation. Additionally, DRM lacks standing to assert its claims for injunctive and declaratory relief because its allegations fail to state a plausible claim that its constituents will be subject to substantial, immediate or irreparable harm through Defendants' ongoing practices and policies. Indeed, DRM's allegations primarily concern its disagreement with the past psychiatric care provided to nine inmates by a former employee of Defendants. DRM's complaint should be dismissed under Fed. R. Civ. P. 12(b)(6).

## LEGAL STANDARD

A complaint must be dismissed when it lacks a cognizable legal theory or sufficient factual allegations to support a cognizable legal theory. *Johnson v. Riverside Healthcare System, LP*, 534 F.3d 1116, 1121 (9th Cir. 2008). Although allegations of material fact are taken as true under Fed. R. Civ. P. 12(b)(6), "for a complaint to survive a motion to dismiss, the nonconclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). Factual allegations must

be enough to raise a right to relief above the speculative level – they must nudge the claim across the line from conceivable to plausible. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Legal conclusions are not accepted as true, and "[t]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-678 (2009). Here, DRM's § 1983 claim is based on allegations that are conclusory, speculative, and which fall short of stating a plausible claim, warranting dismissal under Fed. R. Civ. P. 12(b)(6).

## DISCUSSION

## I.   DRM HAS FAILED TO STATE A CLAIM UNDER 42 U.S.C. § 1983.

DRM's Complaint asserts claims against Defendants Mike Batista and Leroy Kirkegard, in their official capacities, for alleged violations of the Eighth Amendment rights of prisoners with "serious mental illness." (Doc. 1, ¶ 1.) The official capacity claims against Director Batista and Warden Kirkegard constitute claims against the entities they represent – the Montana Department of Corrections ("DOC") and the Montana State Prison ("MSP"), respectively. *Hartmann v. Cal. Dept. of Corrects. & Rehab.*, 707 F.3d 1114, 1127 (9th Cir. 2013). As such, DRM

must prove the elements to sustain a federal civil rights suit against these state entities.[1]

Important here, a governmental entity is not vicariously liable under § 1983 for the acts of its employees. *Flores v. Co. of L.A.*, 758 F.3d 1154, 1158 (9th Cir. 2014); *Monell v. Depart. of Social Serv. of N.Y.C.*, 436 U.S. 658, 689 (1978). Liability is imposed only when an act or failure to act which violates a federal right is the result of a policy or custom made by an official with final policymaking authority concerning the issue in question. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 482-83 (1986).

To sustain its claims for injunctive and declaratory relief, therefore, DRM must prove: (1) a deficient policy, custom or practice exists that is ongoing, (2) the deficient policy, custom or practice, itself, is likely to cause a violation of the federal rights of DRM's members, and (3) an authorized final policymaker is acting with deliberate indifference to those rights. *Connick v. Thompson*, 131 S. Ct. 1350, 1359-1360 (2011); *Bd. of Co. Commrs. of Bryan Co., Okla. v. Brown*, 520 U.S. 397, 403-04 (1997); *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389

---

[1] A § 1983 claim against a state or arm of a state is generally not permitted. *Va. Off. for Protec. & Advoc. v. Stewart*, 131 S. Ct. 1632, 1637-42 (2011); *Will v. Mich. Dep't of St. Police*, 491 U.S. 58, 70 (1989). However, *Ex parte Young* allows a plaintiff to circumvent the Eleventh Amendment by filing suit against a state official in his or her official capacity seeking prospective equitable relief from an ongoing violation of federal law. *Ex parte Young*, 209 U.S. 123, 167 (1908). As set forth more fully below, DRM's allegations do not support a plausible claim of an ongoing violation of federal law. This renders *Ex parte Young* inapplicable and provides yet another reason to dismiss DRM's Complaint.

(1989).  As outlined below, DRM has not plead sufficient facts to raise a plausible claim for relief as to each of these essential elements.

### A. DRM Has Not Alleged Deliberate Indifference.

Deliberate indifference is "a stringent standard of fault, requiring proof that a municipal [or state] actor disregarded a known or obvious consequence of his action." *Bryan Co.*, 520 U.S. at 410.  When a § 1983 claim is asserted against an entity (or, as here, an official in his official capacity), the plaintiff must show a final policymaker acted with deliberate indifference. *Connick*, 131 S. Ct. 1350, 1360.  Here, putting aside mere conclusory statements, those allegations are missing.

It is the named Defendants – the warden and the DOC director – who are final policymakers, not persons employed as "prison staff" or "mental health staff." (*See* Doc. 1, ¶¶ 16, 29.)  Whether a particular official has final policymaking authority is a question of state law. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988); *Lytle v. Carl*, 382 F.3d 978, 982-83 (9th Cir. 2004).  He or she must be in a position of authority such that his or her final decision is appropriately attributed to the entity. *Lytle*, 382 F.3d at 983.

Under Montana law, the responsibility of operating the MSP is placed upon the warden, and the responsibility of establishing policies and programs for MSP is placed upon the DOC director.  Mont. Code Ann. § 53-1-204 (warden is responsible "for the immediate management and control" of MSP, "subject to the

general policies and programs established by the department of corrections.");

Admin. R. Mont. 20.1.101(b) (DOC director "is responsible for the overall policy development, management direction, planning and administration of the department's major program responsibilities."). Montana law thus vests final policymaking authority for DOC and MSP's policies and programs with Director Batista and Warden Kirkegard, respectively. *City of St. Louis*, 485 U.S. at 124. It is their acts or omissions and not those of "prison staff" which are at issue.

In proving an Eighth Amendment cruel and unusual punishment claim, the authorized policymaker must act with deliberate indifference to the inmate's health or safety. He or she must know of and disregard a substantial risk of harm to the inmate's health or safety. This means he or she must be aware of facts from which one can draw an inference that a substantial risk of harm exists, and he or she must actually draw that inference. An awareness of a risk of harm, alone, is not sufficient proof. *Gibson v. Co. of Washoe, Nev.*, 290 F.3d 1175, 1187-88 (9th Cir. 2002). Thus, deliberate indifference is a high legal standard. Proof of negligence, gross negligence or medical malpractice is <u>not</u> sufficient to establish deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 835-37 (1994); *Toguchi v. Chung*, 391 F.3d 1051, 1060-61 (9th Cir. 2004); *see also*, *Manchacu v. Yates*, 2009 WL172179*2 (E.D. Cal. 2009).

Notably absent from DRM's Complaint are any direct factual allegations to support the theory that Director Batista and/or Warden Kirkegard acted with

deliberate indifference to the rights of prisoners with serious mental illness. Instead, DRM's Complaint focuses on the alleged deliberate indifference of "prison staff" and "mental health staff." (Doc. 1, ¶¶ 16, 29-35, 38, 39, 43, 44, 47-55, 58-60, 63-68, 71, 73, 79-90.) Primarily, DRM's Complaint laments the decisions of a staff psychiatrist who is no longer employed at the MSP, thus rendering DRM's allegations inapt in terms of any ongoing violations.

The only allegation that even comes close to suggesting deliberate indifference by a final policymaker is that one of the nine identified inmates, James Larson, filed an administrative appeal to the DOC Director regarding mental health services. (Doc. 1, ¶ 41.) Apart from alleging that Larson appealed some unidentified grievance "regarding inadequate mental health care," however, DRM provides no factual matter to support the notion the DOC director was deliberately indifferent to Larson's rights, much less that the director's alleged failure to act on Larson's grievance evidences an ongoing, widespread practice at the MSP. (Doc. 1, ¶ 41.)

Moreover, prison officials "do not act with deliberate indifference in not ordering mental health care for an inmate (or not recognizing a mental illness) when the health care providers have given their professional medical opinion that [the inmate] does not need mental health care (and does not have a mental illness)." *Smith v. Woodford*, 2008 WL276382**9-10 (N.D. Cal. 2008). Further, establishing a difference in medical opinion does not amount to deliberate

indifference. *Id.* at *10; *see also, Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996); *McCray v. Williams*, 357 F. Supp. 2d 774, 781 (D. Del. 2005).

DRM next points to two prior state court cases – *Walker v. State*, 68 P.3d 872 (Mont. 2003) and *Katka v. State*, No. ADV 2009-1163 (First Jud. Dist. Court, Lewis & Clark Co.) – in an attempt to suggest prior knowledge and deliberate indifference by a final policymaker. (Doc. 1, ¶¶ 93-94). However, those cases are not only dated and distinguishable on multiple levels, they did not decide the issue of cruel and unusual punishment under the Eighth Amendment. *Watson v. St. of Mont.*, 2006 WL1876891**4-6 (D. Mont. 2006). They addressed matters of state law. The Eleventh Amendment to the U.S. Constitution prohibits DRM from seeking injunctive relief on the basis of state law in an official capacity suit. *Vasquez v. Ruckauckas*, 734 F.3d 1025, 1041 (9th Cir. 1993).

DRM's only other allegations pertaining to deliberate indifference are vague, conclusory and formulaic. (Doc. 1, ¶¶ 95-98.) These allegations are, at most, "merely consistent with" liability; they "stop[] short of the line between possibility and plausibility of 'entitlement to relief.'" *Twombly*, 550 U.S. at 557. For example, DRM alleges prisoners with serious mental illness "regularly request and grieve the level of mental health care they are provided," and notes "several prisoners have appealed the inadequacy of the mental health treatment they receive to the Prison Warden and ultimately to the DOC Director." (Doc. 1, ¶ 95.)

Accepting these allegations as true, however, they do nothing more than show a grievance process is in place that is utilized by prisoners with mental illness.

DRM also alleges it has "repeatedly informed Prison officials of serious deficiencies in the Prison's treatment of prisoners with serious mental illness," and specifically references a February 26, 2014 letter it sent to Director Batista just before it commenced this lawsuit. (Doc. 1, ¶¶ 96-97.) DRM then goes on to allege, "[t]o DRM's knowledge, to date, the DOC Defendants have not made any modifications in their treatment of prisoners with serious mental illness." (Doc. 1, ¶ 97.) This allegation, which only confirms DRM's lack of knowledge relating to current and ongoing practices at the MSP, falls far short of the "conscious, affirmative choice" by a final policymaker required to prove deliberate indifference. *Gillette v. Delmore*, 979 F.2d 1342, 1347 (9th Cir.1992); *Harris v. Co. of King*, No. C05-1121C, 2006 WL 2711769 *4 (W.D. Wash. Sept. 21, 2006); *Kelly v. Ariz. Dept. of Correct.*, 409 Fed. Appx. 124, 125-26 (9th Cir. 2010) (dismissing prisoner's complaint for failure to plead facts supporting a reasonable inference that prison officials acted with deliberate indifference).

In summary, DRM's Complaint fails to state a claim that either Director Batista or Warden Kirkegard knew of and disregarded a substantial risk of serious harm to prisoners with serious mental illness. Without sufficient factual matter showing deliberate indifference, DRM's § 1983 claim fails as a matter of law.

15

**B. DRM Has Not Alleged a Deficient Policy or Custom.**

**1. No Allegations Suggest a Deficient Written Policy.**

DRM claims MSP should implement a "more appropriate definition of 'serious mental illness,'" but its own allegations demonstrate the definition of 'serious mental illness' is not established. (Doc. 1, ¶¶ 13-15.) The term is not defined in applicable statutes or case law and certainly does not constitute a constitutional standard. Rather than try to impose its preferred definition through the more appropriate vehicle of legislation, DRM is attempting to use this lawsuit to create new policy on the complex and widely-disputed issue of mental health classifications.

DRM's proposed definition of 'serious mental illness' is extremely broad and would encompass all individuals with intellectual disabilities and severe personality disorders. (Doc. 1, ¶ 15(C).) However, the statutory scheme that grants DRM authority to act on behalf of its constituents, the Protection and Advocacy for Individuals with Mental Illness Act ("PAMII"), 42 U.S.C. § 10801, *et seq.*, does not define "serious mental illness." Rather, PAMII defines "individuals with mental illness" as those who have "significant mental illness or emotional impairment, as determined by a mental health professional qualified under the laws and regulations of the State. . . ." 42 U.S.C. § 10802(4)(A). Montana statutes and case law also do not define "serious mental illness," although

Montana law specifically defines "mental disorder" to exclude intellectual disabilities. Mont. Code Ann. § 53-21-102(9)(b)(iii).

DRM's Complaint offers a definition of serious mental illness alleged to be "accepted by mental health professionals." (Doc. 1, ¶ 15.) However, DRM's Complaint also proves this definition is not universally accepted, by mental health professionals or otherwise, and does not establish a constitutional standard. *See, e.g., Clouthier v. Co. of Contra Costa*, 591 F.3d 1232, 1242-43 (9th Cir. 2010). Moreover, one must remember that reliance on a licensed mental health provider – even one with whom DRM may disagree – is not deliberate indifference. *Smith*, 2008 WL276382**9-10. A difference of opinion on the definition of a serious mental illness is not deliberate indifference to a serious medical need. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

In summary, the DOC Defendants cannot be found liable for a deficient policy for classifying prisoners with 'serious mental illness' when the term 'serious mental illness' is subject to varying definitions and interpretations under federal and Montana law, and when DRM's own Complaint shows Defendants relied on the opinions of psychiatric professionals.

### 2. Sporadic, Isolated Incidents Are Not Evidence of an Ongoing Custom or Practice.

In proving a constitutional claim based on a custom or practice, one must show injury resulted from a permanent and well-settled custom or practice as

opposed to a "single occurrence of unconstitutional action by a non-policymaking employee." *McDade v. West*, 223 F.3d 1135, 1141 (9th Cir. 2000). Thus, "[l]iability for improper custom may not be predicated on isolated and sporadic incidents; it must be founded on practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

The "practices" which DRM alleges to be cruel and unusual punishment are listed in Paragraph 16 of its Complaint. (Doc. 1, ¶ 16.) A review of these allegations reveals they do not approach the threshold of proving "a traditional method of carrying out policy." *Id.* Instead, they concern past acts and omissions relating to nine prisoners, each with his own unique facts and his own unique condition. Nonetheless, DRM attempts to meld some of these experiences together to claim there are nine ongoing unconstitutional customs/practices at the MSP. These allegations are summarized as follows:

1. "[P]lacing prisoners with serious mental illness in various forms of solitary confinement for 22 to 24 hours per day for months and years at a time." (Doc. 1, ¶ 16(a).) The nine identified prisoners – James Larson, James Patrick, Shaun Morrison, Corey Weis, Marty Hayworth, Paul Parker, Walter Taylor, Cleveland Boyer and Matthew Brandemihl – are alleged to have been subjected to this practice. (Doc. 1, ¶¶ 38, 42-44, 48, 50, 54, 60, 63, 71, 80, 91.)

2.    "[P]lacing prisoners with serious mental illness on behavior management plans that involve solitary confinement and extreme restrictions of privileges." (Doc. 1, ¶ 16(b).)  Four prisoners – James Larson, Shaun Morrison, Cory Weis and Matthew Brandemihl – are alleged to have been subjected to this practice.  (Doc. 1, ¶¶ 43-44, 50, 55, 71, 87.)

3.    "[H]aving no standards for determining whether placing a prisoner with serious mental illness in solitary confinement or on a behavior management plan will be harmful to the prisoner's mental health." (Doc. 1, ¶ 16(c).)  No allegations specific to any inmate are made to demonstrate this alleged practice.

4.    "[E]ngaging in a pattern of refusing to properly diagnose prisoners as suffering from serious mental illness." (Doc. 1, ¶ 16(d).)  Six prisoners – James Larson, Marty Hayworth, Paul Parker, Walter Taylor, Cleveland Boyer and Matthew Brandemihl – are alleged to have been subjected to this practice.  (Doc. 1, ¶¶ 39, 58-59, 65, 68, 73, 78, 85.)

5.    "[E]ngaging in a pattern of refusing to provide prisoners with medications for serious mental illness." (Doc. 1, ¶ 16(e).)  Six prisoners – James Larson, James Patrick, Shaun Morrison, Marty Hayworth, Paul Parker and Walter Taylor – are alleged to have been subjected to this practice.  (Doc. 1, ¶¶ 39, 44, 49, 59, 68, 73.)

6. "[F]ailing to have a system in place to review and evaluate the diagnosing and prescribing practices of its mental health staff." (Doc. 1, ¶ 16(f).) No allegations specific to any inmate are made to demonstrate this alleged practice.

7. "[F]ailing to have a system to classify prisoners according to their mental health needs." (Doc. 1, ¶ 16(g).) No allegations specific to any inmate are made to demonstrate this alleged practice.

8. "[F]ailing to adequately consider prisoners' serious mental illnesses when making decisions about prisoners' housing and custody levels." (Doc. 1, ¶ 16(h).) One inmate – Paul Parker – is alleged to have been subject to this practice. (Doc. 1, ¶ 63.)

9. "[H]aving no system in place for auditing, evaluating or ensuring the effectiveness of its mental health care program in treating prisoners with serious mental illness." (Doc. 1, ¶ 16(i).) No allegations specific to any inmate are made to demonstrate this alleged practice.

As listed above, DRM has alleged nine "practices" which are said to violate the Eighth Amendment. (Doc. 1, ¶ 16.) In the context of the <u>thousands</u> of prisoners housed at MSP during the covered years, DRM's allegations, even if taken as true, are not evidence of a practice or custom of sufficient duration and frequency to state a claim for relief. Indeed, four of the nine alleged practices are not supported by a <u>single</u> allegation specific to any inmate. (Doc. 1, ¶¶ 16(c),

(f)(i).) They are based purely on DRM's own *ipse dixit*, devoid of any factual matter, that an unconstitutional practice exists at the MSP.

One alleged "practice" is supported by alleged decisions made regarding a single inmate's housing and custody levels. (Doc. 1, ¶¶ 16(h), 63.) DRM's own allegations prove the inmate's rights were not personally violated by a final policymaker, however, so the allegation fails on its face to suggest an unconstitutional policy or custom. Moreover, a misclassification, itself, is not a constitutional violation. *Myron v. Terhune*, 476 F.3d 716, 718 (4th Cir. 2003); *Capps v. Atiyeh*, 559 F. Supp. 894, 909 (D. Ore. 1982).

The remaining four alleged practices are also not supported by sufficient factual matter to plausibly demonstrate an ongoing policy or custom. DRM states approximately 300 out of 1,500 prisoners in the current MSP population suffer from mental illness. (Doc. 1, ¶ 17.) With this in mind, DRM alleges nine inmates were improperly subjected to solitary confinement over an apparent nine-year period, 2005 to 2014. (Doc. 1, ¶¶ 16(a), 38, 42-44, 48, 50, 54, 60, 63, 71, 80, 91.) DRM alleges four inmates were improperly subjected to behavior management plans during an apparent eight-year period, 2006 to 2014. (Doc. 1, ¶¶ 16(b), 8, 43-44, 50, 55, 71, 87.) DRM alleges six inmates were subjected to a refusal to diagnose serious mental illness during an apparent seven-year period, 2005 to 2012. (Doc. 1, ¶¶ 16(d), 39, 58, 59, 65, 68, 73, 78, 85.) Finally, DRM alleges six

inmates over an apparent six-year period, 2006 to 2012, were refused medications for serious mental illness. (Doc. 1, ¶¶ 16(e), 39, 44, 49, 59, 68, 73.)

DRM's allegations of misconduct are based, in large part, on the care provided by a former MSP staff psychiatrist, Peter Edwards, M.D., to the nine identified prisoners. However, Dr. Edwards is no longer employed by MSP. While DRM's Complaint removed specific reference to Dr. Edwards, it merely substituted reference to "prison staff" engaging in a pattern of "refusing to properly diagnose prisoners as suffering from mental illness." (*Compare*, Cause No. CV-14-25-BU-SEH, Doc. 1, Compl., ¶¶ 40-43, 71, 81, 90, 108-110, 120, 125, 133 (Mar. 31, 2014) *with* Doc. 1, ¶¶ 16, 29-35, 39, 42-44, 48-49, 51, 55, 58-60, 63-68, 71, 73, 78-80, 84-87.)

Even assuming a psychiatrist's treatment could be deemed a policy or practice of the MSP, the allegations pertaining to a psychiatrist no longer employed by MSP is not evidence of an ongoing, system-wide practice. *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990) ("[t]he deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of <u>continued duration</u>, rather than isolated occurrences.") (emphasis added). Without specific factual allegations that <u>current</u> mental health staff misdiagnose and mistreat prisoners with serious mental illness, the allegations fail to state a claim for relief beyond the speculative level because the alleged conduct

constituting a constitutional violation has ceased. *Id.*; *see also Twombly*, 550 U.S. at 547.

Similar to its attempt to rely on the past practices of a former employee, DRM is attempting to litigate disputes that are moot by claiming certain instances of past conduct relating to three deceased inmates are evidence of an ongoing custom. (Doc. 1, ¶¶ 34, 55, 79, 85-86, 90-91.) The Supreme Court has held repeatedly that federal courts lack jurisdiction to review moot questions. *Iron Arrow Honor Socy. v. Heckler*, 464 U.S. 67, 70-71 (1983). A complaint is moot if injuries complained of can no longer be redressed by a favorable judicial decision. *Id.*

In sum, despite its formulaic and conclusory statements regarding ongoing practices at the MSP, DRM's factual allegations pertain to isolated incidents of past conduct that are unique to the particular facts of each case. Even taken as true, these allegations do not suggest practices "of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino*, 99 F.3d at 918.

### 3. DRM Has Not Alleged That a Policy or Custom at MSP is Likely to Cause Violations of the Eighth Amendment.

DRM does not provide factual allegations from which to make a reasonable inference that any MSP policy or custom will cause violations of the Eighth Amendment. *Harry A. v. Duncan*, 351 F. Supp. 2d 1060, 1069 (D. Mont. 2005)

("A policy is the moving force behind a constitutional violation if it caused the violation."). DRM's vague references to MSP's lack of policies and procedures for treating prisoners with serious mental illness fail to establish a causal connection with any alleged violation of the Eighth Amendment. *Id.*

In this regard, to prove that an ongoing custom or practice has or is likely to cause an Eighth Amendment violation, DRM must identify an ongoing risk to its members of "significant injury or the unnecessary and wanton infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). There are no allegations in DRM's Complaint which would support this required showing.

There are two components of an Eighth Amendment cruel and unusual punishment claim, an objective component and a subjective component. The subjective component of an Eighth Amendment cruel and unusual punishment, deliberate indifference, was addressed earlier. *Supra*, sec. (I)(A). In proving the objective component of an Eighth Amendment claim for an alleged unconstitutional deprivation of adequate mental health care, the particular medical need must be 'sufficiently serious.' *Coleman v. Wilson*, 912 F. Supp. 1282, 1298 (E.D. Cal. 1995). DRM "must show a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.'" *Jett*, 439 F.3d at 1096 (citation omitted).

As stated in *Coleman*, "[t]he objective component of deliberate indifference is treated as a mixed question of law and fact. The etiology, symptoms, and diagnosis of medical conditions present questions of fact; whether a medical condition is a 'serious medical need' for purposes of the Eighth Amendment is a legal conclusion . . . ." 912 F. Supp. at 1298. To state a claim under the Eighth Amendment, DRM must show "the [prison] conditions themselves were objectively sufficiently serious to acquire constitutional dimension." *Watson*, 2006 WL1876891, *9. "[M]ere disagreement between a prisoner-patient and prison medical personnel over the need for or course of medical treatment is not a sufficient basis for an Eighth Amendment violation." *Id.*

The MSP is not a mental health facility. Mont. Code Ann. § 53-21-102(10). The Eighth Amendment does not require the MSP "to solve . . . inmates' behavioral, emotional, and personality problems." *Capps v. Atiyeh*, 559 F. Supp. 894, 917 (D. Ore. 1982) (citation omitted). Here, DRM's Complaint does not adequately identify or allege what "ongoing risk" the prisoners are subjected to or that a failure to treat the prisoners' condition could result in further significant injury or the unnecessary and wanton infliction of pain. Instead, DRM states its disagreement with MSP's definition of serious mental illness and concludes "solitary confinement" is detrimental to mental health. (Doc. 1, ¶¶ 13-15, 18.) However, DRM fails to allege how MSP's policies, by itself, are likely to cause an Eighth Amendment violation.

DRM's claims do not establish a claim for relief. DRM merely disagrees with the way Dr. Edwards diagnosed and treated nine individual prisoners. *Iqbal*, 556 U.S. at 678. This is not a sufficient basis for an Eighth Amendment violation. *Watson*, 2006 WL1876891, *9. Moreover, there are no separate allegations relating to an examination, diagnosis or other objective evidence raising a reasonable inference that failure to treat the nine inmates could result in further significant injury or the unnecessary and wanton infliction of pain. *Iqbal*, 556 U.S. at 678.

## II.    DRM LACKS STANDING TO SEEK INJUNCTIVE AND DECLARATORY RELIEF.

Not only does DRM's Complaint fail to state a claim for relief under § 1983, DRM lacks standing to raise a claim for injunctive or declaratory relief because it failed to establish that the prisoners will be subject to substantial and immediate irreparable injury if the relief requested is not granted.

In addition to an Article III standing analysis, a separate and additional jurisdictional requirement for a party seeking equitable relief must be shown – the likelihood of substantial and immediate irreparable injury. *Haynie v. Harris*, 2014 WL 899189 *4 (E.D. Cal. 2014); *Gomez v. Vernon*, 255 F.3d 1118, 1129 (9th Cir. 2001). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief if unaccompanied by any continuing, present adverse effects." *Haynie*, 2014 WL 899189 *4 (citation omitted) (internal

quotation and punctuation omitted). Similarly, a claim for declaratory relief is not ripe for "adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Hodgers-Durgin v. V. de la Vina*, 199 F.3d 1037, 1044 (9th Cir. 1999).

A plaintiff must demonstrate standing for each form of relief requested, and standing must be evident on the face of the complaint in order to survive a motion to dismiss. *Aiken v. Nixon*, 236 F. Supp. 2d 211, 221 (N.D. N.Y. 2002). Here, DRM's Complaint does not identify any individual prisoner that will likely suffer substantial and immediate irreparable injury if relief is not granted and it likewise fails to identify any "ongoing risks" of violations of federal rights. *See, Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 535, 645 (2002). Since DRM cannot establish standing on behalf of an individual member of its association to warrant equitable relief, DRM itself lacks standing. *Haynie*, 2014 WL 899189 *7.

Importantly, the "substantial and immediate irreparable injury" standard for injunctive relief "must also be viewed in conjunction with the requirements of the Prison Litigation Reform Act . . . ." *Gomez*, 255 F.3d at 1128-29 (citing 18 U.S.C. § 3626).

The PLRA limits the prospective relief which can be granted in prisoner cases:

> Prospective relief in any civil action with respect to prison conditions
> shall extend no further than necessary to correct the violation of the
> Federal right of a particular plaintiff or plaintiffs. The court shall not

> grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

18 U.S.C. § 3626(a)(1)(A); *see also Tischler v. Billings Women's Prison*, Cause No. CV-07-173- BLGRFCCSO, 2008 WL 2233501 **1-2 (D. Mont. 2008) *report and recommendation adopted*, Cause No. CV-07-173-BLGRFCCSO, 2008 WL 2233500 (D. Mont. 2008). Here, DRM's broad request for injunctive relief - requesting prisoners at MSP with serious mental illness "receive constitutionally adequate mental health care" - requires a greater degree of specificity pursuant to the PLRA. (Doc. 1, pg. 32, (C)(1).)

Not only must a request for injunctive relief be narrowly tailored to correct the alleged violation of the federal right, the Court's authority to grant equitable relief is also subject to the exhaustion requirements of the PLRA and PAMII. 42 U.S.C. § 1997e(a). Specifically, PAMII requires that "[p]rior to instituting any legal action in a Federal or State court on behalf of a[sic] individual with mental illness, an eligible [organization] . . . shall exhaust in a timely manner all administrative remedies where appropriate." 42 U.S.C. § 10807(a). Such an organization may bring suit without exhausting administrative remedies only if the organization determines that such remedies will not resolve the matter within a reasonable time, or if the suit is brought "to prevent or eliminate imminent serious

harm to a[sic] individual with mental illness." *Id.* § 10807(b). Here, DRM has merely alleged that <u>one</u> particular prisoner, James Larson, exhausted his administrative remedies relative to the claims being asserted. (Doc. 1, ¶ 41.) However, one prisoner, in the context of thousands of prisoners, is insufficient to support liability for an improper custom or policy. *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

Despite the failure to exhaust administrative remedies and DRM's overbroad request for injunctive relief, the fatal flaw in DRM's Complaint is its failure to allege any facts to establish the likelihood that its constituents will be subject to substantial and immediate irreparable injury if the relief requested is not granted. Mere allegations of past incidents of conduct do not support a present case or controversy. *Haynie*, 2014 WL 899189 *4. Given its lack of standing and the lack of a justiciable case, DRM's Complaint fails to state a claim for relief.

## CONCLUSION

DRM has failed to state a claim for relief because it has not alleged sufficient factual matter to support a plausible claim under § 1983. Putting aside mere conclusions, there are no factual allegations that a final policymaker was deliberately indifferent, or that there is an ongoing policy, custom or practice at the MSP that is likely to violate the federal rights of DRM's members. In addition, DRM lacks standing to seek injunctive and declaratory relief because its allegations do not suggest DRM's members will be subject to substantial,

29

immediate or irreparable harm through Defendants' ongoing practices and policies.

DRM's Complaint should be dismissed under Fed. R. Civ. P. 12(b)(6).

DATED this 5th day of June, 2015.

/s/ Mary Cile Glover-Rogers
Mary Cile Glover-Rogers
BOONE KARLBERG P.C.
*Attorneys for Defendants*
*Mike Batista and Leroy Kirkegard*

# CERTIFICATE OF COMPLIANCE

Pursuant to Rule 7.1(d)(2)(E), Local Rules of the United States District Court, District of Montana, I hereby certify that the textual portion of the foregoing brief uses a proportionally spaced Times New Roman typeface of 14 points, is double-spaced, and contains approximately 5,451 words, excluding the parts of the brief exempted by L.R.7.1(d)(2)(E).

DATED this 5th day of June, 2015.

/s/ Mary Cile Glover-Rogers
Mary Cile Glover-Rogers
BOONE KARLBERG P.C.
*Attorneys for Defendants*
*Mike Batista and Leroy Kirkegard*